Matter of Shmuel G. v Rivka G. (2005 NY Slip Op 50120(U))

[*1]

Matter of Shmuel G. v Rivka G.

2005 NY Slip Op 50120(U)

Decided on February 7, 2005

Family Court, Kings County

Hamill, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 7, 2005

Family Court, Kings County
In the Matter of
 SHMUEL AND ESTHER G. Children under the Age of Eighteen Alleged to be Neglected by
 against
RIVKA G., Respondent,
x

Ian Sangenito, Esq., for petitioner
Division of Legal Services,
Administration for Children's Services
345 Adams Street, 8th Floor
Brooklyn, New York 11201
Hilarie Chacker, law guardian
The Children's Law Center
44 Court Street
Brooklyn , NY 11201
Mark Brandys, Esq., for mother
26 Court Street, suite 1215
Brooklyn, New York 11242

Bryanne A. Hamill, J.
On December 9, 2003, the Administration for Children's Services (hereinafter "ACS") requested a court order to immunize, over the objection of respondent mother, 14 year-old Esther and 10 year-old Shmuel, foster care children who have been in their care since January 15, 2002. Pursuant to this Court's written decision of June 21, 2004, this Court conducted an evidentiary hearing to determine if the respondent mother qualifies for the religious exemption to mandatory immunization, pursuant to New York Public Health Law §2164(9). The burden rests on the respondent to show, by a preponderance of the credible evidence, that she genuinely and sincerely holds a religious belief in opposition to immunization.
At the hearing, this Court received various documentary evidence and heard from 3 witnesses: an Ohel Children's Home and Family Services case worker, Mr. Armani; his case work supervisor, Shelly Berger; and the respondent mother. In order to decide the relevant facts, the Court must assess the credibility of the witnesses, most significantly, the mother's, and determine what weight, if any, to place on their testimony.
With respect to the mother, the Court finds her to be fairly honest and forthright for the following reasons. Her testimony was fairly consistent, despite difficult examination. Although her explanations regarding her basis for opposition to immunization may have varied over time, she explained that she gave partial explanations depending on what she believed would have been acceptable to the particular person at the time. Significantly, her various religious and medical reasons are relative to each other, are not inconsistent with each other, and thus, do not undermine her credibility. During the last fifteen years of her life, her practices have been fairly consistent with her espoused beliefs, during which time she never immunized these two subject children. Her testimony is corroborated by documentary evidence which predates the instant application. A letter, dated November 17, 1993, issued by the New York City Department of Health Immunization Committee to Beth Jacob Day Care Center, which granted this mother a religious exemption pursuant to Public Health Law §2164(9) for Esther "based on the parent's expressed religious practices and philosophy" corroborates her testimony, her religious beliefs and her sincerity. The agency's own 383 form generated when these two children first came into foster care in January 2002, documenting the mother's religious opposition to immunization, further corroborates her testimony. And most importantly, this Court carefully observed the [*2]demeanor of the mother, who at times was understandably emotional. For the foregoing reasons, this Court substantially credits, and places great weight on, her testimony.
With respect to the two Ohel Children's Home and Family Services employees, their testimony was quite limited and less relevant to the ultimate determination to be made, i.e. whether this mother possesses a sincerely held religious belief in opposition to immunization. Further, they have an interest in the outcome, given the mother's threats of a lawsuit. Accordingly, this Court, although crediting some of their testimony, places substantially less weight on it.
Based upon the credible evidence adduced at the hearing and the reasonable inferences there from, this Court makes the following findings of fact and conclusions of law.

Findings of Fact
Ms. G. is the mother of these two subject children, now ages 15 and 11, who came into foster care in January 2002. She is Jewish, believes in the God of Abraham, Isaac and Jacob, and accepts the written and oral Torah as given to Moses at Mt. Sinai as a binding religious practice. She has sent these children to Yeshiva and maintains a kosher home. Ms. G. has held religious beliefs grounded in the theology of Bresolov Hasidim since about the time her daughter Esther was born, initially based upon her husband's beliefs. An except of the Breslov religious text, written by Rabbi Nachman, was entered in evidence, demonstrating that a good Breslov Hasidic should depend upon God, and be skeptical of medical treatment and physicians. This mother's objection to immunization is derived from her adherence, understanding, and interpretation of this religious text. According to her interpretation, Breslov approves of medical intervention only in the case of acute and/or life threatening illness, not for prevention. She believes that before she may seek medical intervention, she must conduct a balancing test, based upon being a well educated medical consumer, to determine if medical intervention is necessary. Because she believes there are great health risks as a result of mandatory immunizations, her applicable balancing test weighs against immunization. Further, since immunizations are for disease prevention and not treatment, her adherence and beliefs preclude such immunizations.
Ms. G. further relies upon passages from the Torah reciting dietary restrictions, and believes that vaccinations often contain or are derived from substances that the Jewish laws forbid be ingested. She believes that because the blood is the repository of the soul, any ingestion of vaccines, which she believes contain repulsive and non-kosher materials, causes a direct assault on the blood. She believes that the spiritual impurity of the recipient resulting by way of ingesting impure substances into the blood violates Jewish dietary laws. 
Although the mother concedes that the tenets of Judaism or Breslov Hasidism do not necessarily preclude immunizations, her interpretation and strict adherence thereto does. Further, she is a member of the Church of Human Life Sciences, whose precepts oppose immunization.
Ms. G. has never permitted these two children to be receive immunizations. The children have always attended religious schools and have never been denied admittance to schools based upon her failure to immunize them.. Between January 2002 and November 2003, ACS and Ohel did not seek to immunize the children. In November 2003, Shmuel's foster parent had him immunized once to protect her own family. This angered the mother, who has threatened to sue. Shortly thereafter, on December 9, 2003, ACS requested court authorization to immunize both foster care children.
A letter, dated November 17, 1993, issued by the New York City Department of Health Immunization Committee to Beth Jacob Day Care Center, granted the mother a religious exemption pursuant to Public Health Law §2164(9) for Esther "based on the parent's expressed religious practices and philosophy." In the agency's 853 form, dated January 28, 2002, a case [*3]worker notified ACS that the mother notified Ohel that she had received a religious exemption from the NYC Department of Health in 1993 and a copy was attached. This form and supporting documentation are part of the case record. No one from ACS or Ohel questioned the mother as to the basis for her opposition, until after Shmuel was immunized against the known wishes of the mother and she threatened a lawsuit.
Discussion
New York Public Health Law §2164 mandates parents or guardians immunize children between the ages of two months and eighteen years against poliomyelitis, mumps, measles, diphtheria, rubella, varicella, Haemophilus influenzae type b (Hib) and hepatitis B. However, the legislature has set forth a religious exception to this requirement under §2164(9) which states:
[Section 2164] shall not apply to children whose parent, parents, or guardian hold genuine and sincere religious beliefs which are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.

In order to qualify for the exemption from New York State's mandatory vaccination program under Public Health Law §2164, the parent has the burden of showing, by a preponderance of the evidence, that their opposition to immunization is a sincerely held religious belief. Sherr v. Northport-East Northport Union Free School District, 672 F.Supp.81 (E.D.NY 1987); Farina v. Board of Educ. of City of New York, 116 F.Supp.2d 503 (S.D.N.Y 2000). Courts draw a distinction between genuine and sincerely held religious beliefs with opposition based upon medical, health related or purely moral considerations, scientific or secular theories, or philosophical and personal beliefs for which the exception can not be granted. Farina, supra; Sherr, supra; Matter of Christine M., 157 Misc2nd 4, 15 (NY Fam. Ct. Kings Co. 1992).
Therefore, this Court has the delicate task of assessing whether the mother's personal beliefs are religious in nature, and if so, whether she genuinely and sincerely holds them. 
In determining whether the belief is religious, the U.S. Supreme Court has held that the belief need not be premised in the Western theology of "God" but that the "test of belief in relation to a Supreme Being is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor." United States v. Seeger, 380 U.S. 163, 165-166 (1965). The term religious has expanded to include the ultimate concerns of individuals. Sherr, supra; International Society for Krishna Consciousness, Inc. v. Barber, 650 F.2d 430(2nd Cir 1981). Furthermore, beliefs do not have to be mainstream, logical, or consistent in order to be considered religious. Thomas v. Review Board of the Indian Employment Security Division, 450 US 707 (1981).
Here, Ms. G. is unquestionably Jewish, and espouses beliefs from Breslov Hasidim, the dietary laws in the Torah, and the Church of Human Life Sciences. This Court determines that these personal beliefs pervade the mother's whole way of life, are a matter of ultimate concern for her, and are rooted in religion. 
Once a religious belief is found, an inquiry must be made into the sincerity of the belief. The threshold question of sincerity which must be resolved in every case is, of course, a question of fact." Sherr, 672 F.Supp. at 94. In determining whether the religious belief is sincerely held, the trial court must rely heavily upon its ability to assess the demeanor of the witness in order to weigh the credibility of the claim. See In Re Christina M., 157 Misc 2d 4, 21 (Fam. Ct. Kings County, 1992).
Here, based upon the foregoing analysis regarding the credibility of the mother, the Court finds that this mother genuinely and sincerely holds these religious beliefs. Ms. G. is similar to one [*4]petitioner in Sherr, where the court granted the religious exception because they had researched the religious tenet for years, not just to receive an exception; their beliefs pervaded their whole way of life; they joined a religious group whose tenet professes against vaccination; and most importantly, their demeanor in court conveyed a sincere, deeply held religious belief demonstrating that at the heart of their opposition was a religious foundation. Scherr, supra. at 94, 96-97. Likewise, this mother is similar to the petitioner in Berg, where parents offered religious text to support their conviction; and although it did not conform to the traditional concept of Judaism, they adhered to their own concept of Judaism through their own interpretation of passages and proved that they practiced these beliefs for approximately six years. Berg v. Glen Cove City School District, 853 F.Supp. 651, 655 (E.D.NY 1994).
For the foregoing reasons, this Court finds that, based upon the totality of circumstances, Ms. G.'s opposition to immunization is rooted in her religious beliefs, and that her religious beliefs are genuine and sincerely held. Thus, this Court holds that, as a matter of law, this respondent mother qualifies for the religious exemption to immunizations of her children, pursuant to Public Health Law §2164(9). Accordingly, ACS's instant application to immunize these two foster care children is hereby denied.
This constitutes the decision and Order of this Court.
Dated: Brooklyn, New York
February 7, 2005
________________________________
HON. BRYANNE A. HAMILL
Judge of the Family Court